JOHN GEORGE KAESER, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 10974

December 30, 1980                              620 P.2d 872

*William N. Dunseath,* Public Defender, and *Michael B. McDonald,* Deputy Public Defender, Washoe County, and *Samuel S. Wardle,* Carson City, for Appellant.

*Calvin R. X. Dunlap,* District Attorney, *Edward B. Horn* and *Richard Cornell,* Deputy District Attorneys, Washoe County, for Respondent.

---

[2]The Governor commissioned The Honorable Michael E. Fondi, District Judge, to sit in this case in place of JUSTICE GORDON THOMPSON. Nev. Const. art. 6, § 4.

**OPINION**

By the Court, THOMPSON, J.:

A jury convicted Kaeser of the crimes of first degree kidnapping, sexual assault and burglary. His appeal tenders two important questions for our resolution. The first concerns the sixth amendment right to counsel and whether that right was denied Kaeser by the conduct of the prosecutor in calling Kaeser's attorney as a rebuttal witness. The second question involves the propriety of the prosecutor's cross-examination of Kaeser with regard to his preference for oral sex. For reasons hereafter expressed we condemn the prosecutor's tactic in each instance. We find the errors prejudicial and remand for a new trial.

At approximately 10 o'clock p.m. a fourteen-year-old girl was kidnapped from her bed by a man claiming to be a volunteer fireman checking out a gas leak. She was threatened with a small calibre handgun and driven to the Golden Valley area in Washoe County where she was sexually assaulted. She was returned to her apartment at about 1:30 o'clock a.m. and released under threats not to tell anyone what had occurred.

The girl described to the police her assailant, his car, numerous items observed in the car and the route taken to Golden Valley. These descriptions led to the arrest of Kaeser.

Kaeser testified at trial. He did not deny that his car was used in the abduction but asserted that someone else used it. He stated that he generally left the car unlocked with the keys under the seat. He asserted that at the time of the crimes he was at home with his wife and that his wife left the house at 11 o'clock p.m. to visit two friends, Christina Nelms and Laura Riley. He testified that he called the Nelms' residence about midnight and asked to speak with his wife. Laura Riley answered the phone. Her testimony corroborated Kaeser's in this regard.

On cross-examination by the prosecutor, Kaeser implied that his wife would support his alibi if she testified. He also testified

that his attorney had been in contact with his wife. He said that he did not know if she was available to testify, nor did he know of her whereabouts. The wife did not testify.

The prosecutor called Kaeser's attorney to the stand as the State's first rebuttal witness. The attorney was not given advance warning that he would be called. Although he expressed surprise he did not object to taking the stand. The prosecutor asked defense counsel about the availability of the wife to testify. He answered that he had been in touch with the wife early in the investigation but that he had not been able to locate her since. The defense attorney also was asked about the effect of the marital privilege upon an attempt by the prosecutor to call the wife as a witness. It is reasonably clear from the record that the prosecutor knew how to locate the wife but did not do so contending that the marital privilege would bar her testimony. The prosecutor never asked Kaeser whether he would assert that privilege.

During his cross-examination of Kaeser the prosecutor asked several questions regarding his sexual relations with his wife. Kaeser denied that he was impotent. The prosecutor asked him if he was only stimulated by oral copulation. Kaeser denied that. The fourteen-year-old victim had testified that her assailant had forced her to engage in oral sex with him. No effort was made by the State to prove Kaeser's insinuated sexual preference.

1. The sixth amendment guarantees the assistance of counsel and is made applicable to the states by the fourteenth amendment. Gideon v. Wainwright, 372 U.S. 335 (1965)[1]. The Court noted that the guiding hand of counsel is required at every step of the proceedings against him. Whether this principle is violated when the defendant is deprived of his right to consult with his counsel for the period of time such counsel is on the stand as a witness is the question here proffered.

The issue has been considered by state and federal courts in varying factual contexts. It appears generally to be agreed that the mere fact counsel is called to testify, without more, does not establish a material interference with the conduct of the defense or deny a fair trial. United States v. Hall, 346 F.2d 875 (2d Cir. 1965); United States v. Freeman, 519 F.2d 67 (9th Cir. 1975); State v. Sullivan, 373 P.2d 474 (Wash. 1962). One can

[1]Our State Constitution states that the party accused shall be allowed to appear and defend in person, and with counsel. Art. 1, § 8.

envision, however, that great mischief may result when defense counsel is called as a prosecution witness. Hanks v. United States, 420 F.2d 412 (10th Cir. 1970). The defendant is unable to consult with his counsel when counsel is on the stand as a witness. It is most difficult for counsel to protect the record and at the same time keep in mind what questions should be asked himself on cross-examination. To be a witness for the prosecution, and at the same time the counsel for the defendant is an unpleasant and difficult situation which should, we think, be avoided whenever possible. State v. Reynolds, 564 S.W.2d 874 (Mo. 1978).

In the case at hand the prosecutor used defense counsel's testimony to attack the credibility of both Kaeser and counsel. Through defense counsel's testimony the prosecutor sought to rebut Kaeser's testimony that his wife was not available, thus refuting the implication that Kaeser's wife would support his alibi. Moreover, it appears that the prosecutor's tactic was unnecessary. The wife's attorney was a witness for the State and could have been asked about defense efforts to locate her. The inquiry was not made. Had this been done, the prosecutor easily could have argued to the jury that the wife was available to testify had the defense desired to call her, and that her absence suggested that she would not have supported Kaeser's alibi. In these circumstances prejudicial error occurred under the state constitutional provision guaranteeing the right to appear and defend in person and with counsel. Nev. Const. art. 1, § 8; State v. Reynolds, 564 S.W.2d 874 (Mo. 1978); State v. Sullivan, 373 P.2d 474 (Wash. 1962); State v. Livingston, 285 N.E.2d 75 (OhioApp. 1972); People v. Lathrom, 13 Cal.Rptr. 325 (Cal.App. 1961).

2. We deem it unnecessary to discuss other assigned errors. Reversed and remanded for a new trial.

MOWBRAY, C. J., and GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.