**Ramiro FLORES, Jr., Appellant,**

v.

**The STATE of Texas.**

**No. PD–1908–02.**

Court of Criminal Appeals of Texas.

Dec. 15, 2004.

---

17. 740 S.W.2d at 782.

18. 906 S.W.2d at 938.

19. 644 S.W.2d 5 (Tex.Crim.App.1983)

20. *Id.* at 6–8.

21. *See McKittrick, supra.*

M. Patrick Maguire, Kerrville, for Appellant.

E. Bruce Curry, District Attorney, Kerrville, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, WOMACK, HERVEY, and COCHRAN, JJ., joined.

The issue we decide today is whether, absent a compelling need for the testimony, it is error to order defense counsel to testify over objection when called by the State as a fact witness. We conclude it is and reverse the judgment of the appellate court.

## I. The Relevant Facts

A jury convicted appellant of aggravated assault, and the trial court, after finding the enhancement paragraphs true, sentenced him to fifteen years in prison. The victim was stabbed several times during a knife fight in a nightclub restroom. However, the issue of who actually stabbed him was hotly contested at trial. In support of his theory, defense counsel elicited testimony that the victim had been unable to identify the defendant during an earlier pre-trial hearing and had to ask the court interpreter who the defendant was. Although defense counsel never got a straight answer from the victim, the State requested permission to call defense counsel as a witness in an attempt to rebut this "false impression." Defense counsel objected, but was ordered to testify as to his recollection of the incident between the victim and the interpreter. Defense counsel testified that he did not hear the victim ask the interpreter to identify the defendant.

## II. The Appellate Issues

The exact issue upon which we granted review is "whether the court of appeals was correct in holding there is no reversible error when the State calls defense counsel as a witness to testify on behalf of the State during the guilt/innocence phase of appellant's jury trial." Appellant complains that (1) he was denied a "fair trial,"[1] and (2) he received ineffective assistance of counsel under the Sixth Amendment.

---

1. Appellant argued that he was denied a fair trial based on *Ford v. State,* 166 Tex.Crim. 347, 314 S.W.2d 101 (App.1958), Texas Disciplinary Rule of Professional Conduct 3.08 (the lawyer-witness rule), and his right to a fair trial under the Fourteenth Amendment of the United States Constitution.

█ In addressing these arguments, the court of appeals concluded that appellant's reliance on our decision in *Ford v. State* was misplaced; defense counsel's credibility was not undermined by the ordered testimony; and the ineffective assistance complaint involved a "self-interest conflict," therefore, harm was not presumed and, moreover, none was shown.[2] As to appellant's fair-trial complaint, the court of appeals does not expressly hold whether the trial court erred by ordering defense counsel to testify over objection. The opinion suggests that the appellate court found no error, but even if it was error, it was harmless. As to appellant's Sixth Amendment argument, the appellate court applied our holding in *Monreal v. State*, 947 S.W.2d 559 (Tex.Crim.App.1997) to find that trial counsel was burdened with a conflict of interest, but found no harm. We find the underpinnings and rationale of the court of appeals's implicit and express holdings unreasonable for a number of reasons. However, that is not to say that the court of appeals did not take great pains to reach a sound result, or that its reasoning is entirely illogical or lacking in thought. Indeed, the most daunting task before this court, and presumably the lower court too, was fashioning a workable rule that is fair to both the State and the defense bar when there is little Texas precedent and while bearing in mind the primacy of the rights of the accused. Thus, we find that the appellate court's judgment cannot be affirmed because it failed to consider fully the implications of the practice of calling defense counsel as a fact witness for the State in a criminal proceeding.[3] Accordingly, based on our analysis below, we hold that the court of appeals erred.

## III. Analysis

As noted, appellant's complaint is based on two grounds: (1) his right to a fair trial in violation of Texas and federal law, and (2) a violation of the right to effective assistance of counsel. We find appellant's argument under the first ground compelling, and therefore do not address his second argument.

It is not surprising that our decisional law is sparse when it concerns defense counsel being called to testify against his own client during the client's criminal prosecution. In fact, over forty-five years have passed since we have addressed such a complaint. In *Ford v. State*,[4] the State called trial counsel to the stand and elicited testimony in the presence of the jury designed to show that trial counsel had, in some fashion, acted improperly during jury selection. We reversed, holding that "[t]he questions propounded were clearly improper, and the trial court fell into error when he overruled the timely objection made thereto."[5] Our decision in *Ford* is the likely reason that prosecutors across the state have since refrained from requesting testimony from defense counsel during a criminal prosecution. This is not a mere supposition, because the practice has been tolerated in varying degrees in other jurisdictions by applying a "compel-

---

2. *Flores v. State*, 90 S.W.3d 875, 880, 883 (Tex.App.-San Antonio 2002).

3. Appellant argues that permitting the State to call defense counsel as a witness in a criminal trial "undermines the adversarial process that is the cornerstone of the principle of Due Process guaranteed by the 14th Amendment to the United States Constitution." We agree. One can envision the "great mischief" that may result when defense counsel is called as a prosecution witness. *Hanks v. United States*, 420 F.2d 412, 413 (10th Cir.1970).

4. 314 S.W.2d at 102.

5. *Id.*

ling need" test.[6]  Nevertheless, since *Ford*, the rule in Texas has been that calling defense counsel as a fact witness for the State is error.  However clear our edict was, we did not espouse a test for harm.[7]  In fashioning our test today, we considered the policy behind the lawyer-witness rule,[8] authority from other jurisdictions, and federal law.

▆▆▆  Those state and federal courts that have addressed the issue of calling defense counsel as a witness in a criminal trial have been very reluctant to permit such an action.[9]  Permitting a prosecutor to call the defendant's attorney as a witness "inevitably confuses the distinctions between advocate and witness, argument and testimony, [and] is acceptable only if required by compelling and legitimate

need."[10]  Under the compelling need test, which we adopt today, the State must show that: (1) there is no feasible alternative for obtaining and presenting the information to the jury except through defense counsel's testimony;[11] and (2) the testimony is essential, not merely relevant, to the State's case.  It is error to order defense counsel to testify as a witness in the trial unless the trial court determines, outside the presence of the jury, that there is a compelling need for defense counsel's testimony under this two-pronged test.

In *Venable v. State*,[12] the Court of Special Appeals of Maryland ordered a new trial under circumstances similar to those here.  The prosecutor called Venable's lawyer to the stand to impeach the testimony of a non-party witness.  The State

---

6.  *Ullmann v. State*, 230 Conn. 698, 717–18, 647 A.2d 324, 334 (1994) (adopting compelling need test to be applied when either side in a criminal case seeks to call a prosecutor or defense attorney, who is or has been professionally involved in the case, to testify); *see also United States v. Freeman*, 519 F.2d 67, 68 (9th Cir.1975); *United States v. Hall*, 346 F.2d 875, 882 (2d Cir.1965) ("Defense counsel served merely as a conduit for transmission of a message.").

7.  *See generally* LaFave & Israel, CRIMINAL PROCEDURE § 27.6(a) (2d ed.1999) (origins of harmless error review).  Texas's former harmless error rule was promulgated in 1986.  TEX.R.APP. P. 81(b)(2).

8.  Comment 4 to the lawyer-witness rule provides in its entirety as follows: "In all other circumstances, the principal concern over allowing a lawyer to serve as both an advocate and witness for a client is the possible confusion that those dual roles could create for the finder of fact.  Normally those dual roles are unlikely to create exceptional difficulties when the lawyer's testimony is limited to the areas set out in sub-paragraphs (a)(1)-(4) of this Rule. If, however, the lawyer's testimony concerns a controversial or contested matter, combining the roles of advocate and witness can unfairly prejudice the opposing party.  A witness is required to testify on the basis of personal knowledge, while an advocate is ex-

pected to explain and comment on evidence given by others.  It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof."  TEX. DISCIPLINARY R. PROF. CONDUCT 3.08 (1994).

9.  *C.f. United States v. Prantil*, 764 F.2d 548, 551–54 (9th Cir.1985) (discussing advocate-witness rule and concluding that, while there is no absolute bar to calling a prosecutor as a witness, sponsoring party must show "a 'compelling need' before a participating prosecutor will be permitted to testify"); *Ullmann v. State*, 647 A.2d at 333–37 (adopting "compelling need" test when either party in a criminal case seeks testimony from an opposing advocate).

10.  *United States v. Schwartzbaum*, 527 F.2d 249, 253 (2d Cir.1975).

11.  *C.f. Prantil*, 764 F.2d at 551; *United States v. Torres*, 503 F.2d 1120, 1126 (2d Cir.1974) ("[t]here was no showing that any of the other people who were in the courtroom at the time Ortiz and Torres allegedly conversed, such as marshals, court clerks, court reporters or interpreters, were unavailable to testify").

12.  108 Md.App. 395, 672 A.2d 123 (Md.Ct. Spec.App.1996).  Venable was charged with distribution of cocaine.

argued to the jury that securing defense counsel's testimony "was the only way I had of showing you at that time that [the non-party witness] was lying."[13] After concluding that "putting defense counsel in the position of a prosecution witness is something that 'should be avoided whenever possible,'"[14] the Maryland court found that, as a practical matter, the situation prevented the attorney from performing his duties and consulting with his client; that there was no way to assure that the attorney's credibility would not be adversely affected; and moreover, the record did not reflect the right to introduce impeachment testimony.[15]

■ On the record before us, we conclude that the State did not demonstrate a compelling need for defense counsel's testimony because there was no showing that the interpreter was unavailable.[16] Moreover, the testimony was not essential to the State's case. The State argued that the testimony was necessary to repair a "false impression" by defense counsel.[17] But, in our view, defense counsel did not necessarily leave a "false impression" by questioning the victim about his need to ask the identity of his attacker. The record does not reflect whether someone else told defense counsel that the victim asked about the identity of his attacker.[18] Re-

gardless, these facts do not present an appropriate situation where the testimony could be properly admitted under this exception; therefore, it cannot be fairly said that defense counsel's testimony was essential to the State's case under the second prong of our compelling need test. That is, defense counsel did not necessarily leave a false impression-he merely elicited probative testimony. Accordingly, we hold that the trial court erred under both prongs of our compelling need test in ordering the testimony over objection. And, as explained below, we hold that the error was harmful.

■ The court of appeals reasoned that the substance of the testimony bore only on a trivial matter and therefore could not have affected the jury's decision. Examining the harm as resulting from just the substance of the testimony is not the proper focus. The court of appeals concluded that the "testimony neither strengthened the State's case nor weakened Flores's case," and it was unlikely that, in view of the overwhelming evidence of guilt, "the average juror would have found the State's case less persuasive had the State never called defense counsel to testify." *Flores*, 90 S.W.3d at 880. This is beside the point.[19] The harm flows, in part, from

---

13. *Id.* at 128.

14. *Id.* (citing *Kaeser v. State*, 96 Nev. 955, 620 P.2d 872, 874 (1980)).

15. *Id.* at 128–29.

16. As noted by the court of appeals, "[t]he interpreter's availability to testify was never explored at trial." *Flores*, 90 S.W.3d at 880 n. 2.

17. An exception to the general rule that a party is not entitled to impeach a witness on a collateral matter exists where a witness has left a false impression concerning a matter relating to his or her credibility. *Flannery v.*

*State*, 676 S.W.2d 369, 370 (Tex.Crim.App. 1984). In such a case, the opposing party is allowed to correct that false impression.

18. It is clear to us that the situation here did not trigger the exception to the general rule preventing cross-examination on a collateral matter. *See Flannery v. State*, 676 S.W.2d at 370.

19. We find appellant's additional argument on this point persuasive. In his brief on the merits, he states that "[t]o permit this practice breaches the integrity of the constitutional process leading to a defendant's conviction. If we are to maintain the integrity of the process, it is not enough to simply say 'the

placing the lawyer in a dual role and the impressions created thereby, which is the primary concern of the lawyer-witness rule cited to us by appellant. TEX. DISCIPLINARY R. PROF. CONDUCT 3.08.

The facts of *Venable* illustrate the problem with looking to just the substance of the testimony in determining whether a defendant is harmed by this type of error. In *Venable,* the facts to which the attorney testified were merely collateral—i.e., whether the witness was notified by defense counsel about the criminal trial. The harm, as perceived by the Maryland court, had nothing to do with the substance of the testimony. Instead, the court addressed its concern to the overall effect of such a practice.

We believe a standard harm analysis would be inadequate to address the error which is brought to bear on the proceeding itself.[20] Framing the harm in this fashion demonstrates why a *Strickland*[21] analysis, as adopted by the court of appeals, is inadequate to address this type of error. If the focus is on the substance of the testimony, it obscures the greater consideration of the *continuing credibility of defense counsel as an advocate after testifying as a witness.* These policy considerations, at the very heart of the lawyer-witness rule, should be the focus of the harm analysis—not whether, upon the entire record, the substance of the testimony elicited prejudiced appellant's case.[22]

We hold that, when there is a compelling need to call defense attorney as a witness in the case, the trial court must take all appropriate ameliorative measures to prevent harm. Appropriate ameliorative measures include, but are not limited to: (1) substitution of another attorney to replace defense counsel once it becomes apparent that the testimony is required;[23] and (2) appointment of an additional attorney to represent the defendant during the questioning of defense counsel if there is a compelling need for counsel to testify. The failure to take such measures affects the analysis. The trial court must also be confident that defense counsel's credibility before the jury will not be impugned, tarnished, or discredited in any way; the jury will not be confused by the testimony, the subsequent argument relating to the testimony, or the break in the proceedings; and the testimony will not involve, relate to or touch upon any privileged communication.

A lawyer acting as witness against his client cannot properly perform his duties to his client. With the lawyer on the stand and the client at counsel table, "it is impossible for the defendant to consult with his

---

evidence against the defendant was overwhelming, or the testimony of the defendant's attorney did not harm defendant, therefore, the conviction stands despite the impropriety of calling the defense attorney as a witness.' "

20. *State v. Livingston,* 30 Ohio App.2d 232, 285 N.E.2d 75, 77 (1972) ("the fact that defendant's counsel was called as a witness for the state taints this entire trial so that the defendant was denied the fair trial to which he is entitled.").

21. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

22. Moreover, our examination of the record reveals that the evidence of guilt was not "overwhelming" as the court of appeals found. *Flores,* 90 S.W.3d at 880. For example, during the investigation, the complaining witness first identified appellant's brother as the perpetrator, who, when called to testify at appellant's trial, refused to testify, asserting his Fifth Amendment right against self-incrimination.

23. The trial court must inquire of the *defendant*—not defense counsel—whether a new attorney is desired. *See Venable,* 672 A.2d at 129.

attorney." [24] And, a lawyer who is testifying for the State cannot adequately protect the record.[25] With our preservation rules, it would be a super-human accomplishment to lodge proper and specific objections to the questions while testifying for the State.[26] Additionally, one would have to avoid divulging any privileged information [27] and inadvertent admissions and anticipate the effect of one's answers, while keeping in mind the issues upon which cross-examination of oneself would be required.[28] And, after being burdened with this impossible task, the lawyer would then be faced with cross-examining himself and arguing the client's case to the jury.[29] Putting a defense attorney in the position of arguing his own credibility to the jury is akin to striking the defendant over the shoulder of his attorney.[30] Our overall concerns were succinctly stated by the Ohio Court of Appeals in *State v. Livingston*:[31]

> The adversary system of justice is predicated upon the proposition that justice will most surely prevail when adversaries are pitted one against the other. Under that system, it is the sworn duty of defense counsel to use all honorable and legal means to defend a client charged with a crime. It is inconceivable that a lawyer, seeking to convince a jury of the innocence of his client, or

that the accused has not been proven guilty, can perform that high duty when he assumes the dual role of defense counsel and witness for the prosecution. Such a procedure sullies the entire legal profession. More particularly, it is manifestly unfair to the honorable trial counsel in this case, who was forced, against his will, to testify against the very client he was sworn to defend; his credibility as a lawyer immediately becomes suspect in the eyes of the jury. Above all, it was unfair to the defendant, who was convicted with the help of his own lawyer's testimony.

Thus, in accordance with our holding today, the State may indeed call defense counsel to the stand, and the court may require the lawyer testify, but the State will do so at its own peril.

### III. Conclusion

Because the trial court did not undertake any ameliorative measures, the concerns brought about by calling defense counsel as a witness against his own client have not been assuaged here. Therefore, we reverse the court of appeals and remand for a new trial.

JOHNSON, J., filed a concurring opinion in which PRICE, J., joined.

KEASLER, J., concurred in the result.

24. *Kaeser v. State*, 620 P.2d at 873–74 (finding that right to appear and defend in person under Nev. Const. art 1, § 8, and an accused's "sixth-amendment right" to counsel, offended by calling defense counsel as rebuttal witness).

25. *Id.*

26. *See id.;* Tex.R.App. P. 33.1.

27. We note that the most likely source of the information concerning the complaining witness's inability to name his attacker was appellant, who was seated next to his attorney.

28. Attempts to cross-examine oneself may take on a ludicrous appearance. *State v. Thomas*, 53 Or.App. 375, 631 P.2d 1387, 1390 (1981).

29. *Id.* (whether an attorney is able to retain a truly adversary posture, when it may appear to a jury that he is playing on both teams, is at least problematical.).

30. *Bray v. State*, 478 S.W.2d 89, 90 (Tex.Crim. App.1972); *Summers v. State*, 147 Tex.Crim. 519, 182 S.W.2d 720, 721–22 (1944).

31. 285 N.E.2d at 77.

JOHNSON, J., filed a concurring opinion in which PRICE, J., joined.

Today the court adopts the compelling-need test as the standard for determining whether during a criminal trial, the state may properly call, as a fact witness for the state, the defense counsel in that trial. While the test is narrow and the burden on the state properly heavy under this test, I do not believe that it completely addresses the problem.

Very rarely will circumstances permit the state to carry its burden of demonstrating the lack of a feasible alternative and critical need for the testimony. In the few cases in which the state can demonstrate such compelling need, that need will almost always have been evident long before trial begins and should have been addressed before trial by a motion to disqualify or other appropriate motion. *See Brown v. State*, 921 S.W.2d 227, 231 (Tex.Crim.App.1996)(Keller, J., concurring)(the state must show that the testimony is important to the state's case or is required to rebut the defense case and that "the need for the testimony could not reasonably have been anticipated"). In such a case, the state should not be permitted to ambush the defense during trial, and a request for the opposing counsel to testify should be denied. The same should be true when a defense attorney seeks to call a prosecutor as a witness.

If the compelling need is claimed to have arisen during trial, as is the assertion here, it will most likely be the result of counsel's conduct during trial. In this case, the prosecutor's excuse for calling defense counsel was that counsel had created a "false impression" by questioning the complainant about his identification of the defendant as the person who had stabbed him, a proper inquiry. There was no "false impression," but even if there had been, as the court of appeals noted, " 'false impressions' left by defense counsel's questioning of witnesses is best addressed by skillful re-direct or re-cross examination by the State, not by calling defense counsel as a witness."[1] The most appropriate action by the state would have been to call the interpreter[2] who had allegedly been asked for help in identifying the defendant and who was the only person who could testify from personal knowledge. Instead, the prosecutor improperly called the defense counsel, who had no personal knowledge and who had properly attempted to impeach the complainant's identification of his client. When the state disrupts the attorney—client relationship in such a manner, the client is unrepresented during the time that the counsel is testifying, a constitutional violation. The counsel is put in an ethical bind: how to maintain confidentiality, how to zealously represent, how to cross-examine oneself effectively-all without compromising the client's interests. It is also likely that the jury may be confused by the defense counsel's dual role[3] or that counsel's credibility would be

---

**1.** *Flores v. State,* 90 S.W.3d 875, 884 (Tex. App–San Antonio 2002).

**2.** The burden is on the proponent to show the unavailability of a witness. *Boyd v. State,* 643 S.W.2d 708, 709 (Tex.Crim.App.1982)(appellant's proffered testimony by a witness in a prior proceeding was excluded; "He could have presented the witness in person to testify, or, by making proper demonstration of unavailability of that witness, he could have presented evidence of the defensive theory by alternative means.") There is nothing in the record to indicate that any inquiry was made as to the availability of the interpreter.

**3.** *See* Texas Disciplinary Rules of Professional Conduct, Rule 3.08, Comment 4 (2003)("the principal concern over allowing a lawyer to serve as both an advocate and witness for a client is the possible confusion that those dual roles could create for the finder of fact.").

compromised in the eyes of the jury; is defense counsel speaking as an advocate for the defendant or as a witness for the state? [4]

Pending in this Court is another appeal, from Kendall County,[5] in which the court of appeals noted that this same prosecutor, citing the creation of "false impressions" by defense counsel, called herself as a witness, testified to an irrelevant and collateral matter, revealed the substance of pre-trial negotiations with defense counsel, declined to allow herself to be cross-examined by the defense counsel, and then "resumed her role as an advocate for the state and continued to try the case." [6] The prosecutor in this cause has demonstrated an unfortunate tendency to abuse her authority to call witnesses. Such conduct is reprehensible in a public official and ought to be soundly censured, especially when the conduct is a continuing course of conduct, not a single lapse.

Article 2.01 of the Texas Code of Criminal Procedure states that it "shall be the primary duty of all prosecutors, ..., not to convict, but to see that justice is done." Justice is not done when the defendant is deprived of a fair trial by the actions of the prosecutor.

I concur in the judgment of the Court.

---

**4.** *Brown v. State* at 231.

**5.** *Ramon v. State,* No. 04–02–00219–CR, 2003 WL 22082410, 2003 Tex.App. LEXIS 7892

(Tex.App.-San Antonio, September 10, 2003)(not designated for publication).

